IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

THINH LUONG,                  )    CIVIL 16-00613 LEK-KSC
                              )
        Plaintiff,            )
                              )
    vs.                       )
                              )
FRANCIS SEGUEIRA, in his      )
Official Capacity only as     )
Warden of Oahu Community      )
Correctional Center, ACO PAT  )
SOOALO, AND JOHN DOES 1-5,    )
                              )
        Defendants.           )
_____)
JOHN RANDALL SILVA,           )    CIVIL 17-00563 LEK-KSC
                              )
        Plaintiff,            )
                              )
    vs.                       )
                              )
PATRICK SOOALO and            )
STATE OF HAWAII,              )
                              )
        Defendants.           )
_____)


**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On January 3, 2018, Defendants the State of Hawai`i

("the State"), Patrick Sooalo ("Sooalo"), and Francis Segueira,

in his official capacity as Warden of Oahu Community Correctional

Center ("Segueira," collectively "Defendants"), filed their

Motion for Summary Judgment ("Motion"), seeking summary judgment

as to Plaintiff John Randall Silva's ("Silva") claims.[1]  [Dkt.

_____

    [1] Segueira is not named as a defendant in Silva v. Sooalo,
et al., CV 17-00563 LEK-KSC ("CV 17-563").  Segueira and Sooalo
                                          (continued...)

no. 18.]  Silva and Plaintiff Thinh Luong ("Luong," collectively
"Plaintiffs") filed their memorandum in opposition on
February 22, 2017, and Defendants filed their reply on March 1,
2018.  [Dkt. nos. 24, 26.]  This matter came on for hearing on
March 19, 2018.  Defendants' Motion is hereby granted in part and
denied in part for the reasons set forth below.  The Motion is
granted as to Silva's 42 U.S.C. § 1983 claim, based on the
failure to exhaust administrative remedies.  The grant of summary
judgment is without prejudice to the litigation of the merits of
Silva's § 1983 claim, if properly presented in state court.  The
Motion is denied as to Silva's state law claims, which this Court
declines to exercise supplemental jurisdiction over and remands
to state court.

**BACKGROUND**

Silva filed his Complaint on September 19, 2017 in
state court, and Sooalo and the State (collectively "the Silva
Defendants") removed the case on November 16, 2017, based federal
question jurisdiction.  [Notice of Removal, filed 11/16/17 (dkt.
no. 1), at ¶ 2, Exh. A (Silva's Complaint).]  Luong's case and
Silva's case both arise from a December 21, 2015 incident at the

---

[1] (...continued)
are the defendants in <u>Luong v. Sequeira, et al.</u>, CV 16-00613 LEK-
KSC ("CV 16-613").  CV 16-613 and CV 17-563 are consolidated.
[Minutes, filed 12/6/07 (dkt. no. 10), at 1.]  Because the Motion
only addresses Silva's claims, all citations in this Order refer
to the filings in CV 17-563, unless otherwise specified.

Oahu Community Correctional Center ("OCCC") – where they were incarcerated at the time – in which they were allegedly assaulted by Sooalo, an OCCC Adult Correctional Officer ("ACO").[2] [Complaint at ¶¶ 4-9; CV 16-613, First Amended Complaint, filed 7/17/17 (dkt. no. 20), at ¶¶ 5-11.]

Silva alleges the following claims: a negligence claim against Sooalo ("Count I"); a 42 U.S.C. § 1983 claim for violation of his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment due process rights ("Count II"); a common law battery claim ("Count III"); a claim alleging gross negligence or other willful, wanton, malicious, or improper conduct warranting punitive damages ("Count IV"); a claim that the State is liable for its employees' – including Sooalo's – negligence ("Count V"); and a claim alleging negligent supervision and control and/or ratification and concealment of the ACOs' use of excessive force ("Count VI"). [Complaint at pgs. 1-5.]

The sole issue presented in the Motion is whether the Silva Defendants are entitled to summary judgment as to Silva's claims because he did not exhaust his administrative remedies, as

---

[2] Luong is no longer incarcerated, and Silva is currently incarcerated at the Halawa Correctional Facility. [Mem. in Supp. of Motion at 1.]

required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).[3]

The Department of Public Safety ("DPS") Corrections Administration Policy and Procedures Policy No. COR.12.03 ("the Grievance Policy") sets forth the administrative remedies a State inmate must pursue before filing a § 1983 action. [Defs.' Concise Statement of Material Facts in Supp. of Motion for Summary Judgment Against Pltf. John Randall Silva ("Defs.' CSOF"), filed 1/3/18 (dkt. no. 19), Decl. of Shelley D. Harrington ("Harrington Decl.") at ¶ 3, Exh. 1 (Grievance Policy).[4]] The Grievance Policy provides for a three-step grievance process. At each step, the inmate's grievance is reviewed, and a response is provided to the inmate. The inmate may file a § 1983 action after he has completed all of the steps. [Harrington Decl. at ¶ 4.]

The inmate must submit his initial grievance within fourteen days after the occurrence of the incident that is the subject of the grievance, but an extension may be allowed if the inmate establishes, in writing, a "valid reason" for the delay in

---

[3] The answer in the lead case asserts the defense of failure to exhaust – "including but not limited to the Prison Litigation Reform Act." [CV 16-613, Segueira & Sooalo's Amended Answer to Pltf.'s First Amended Complaint, filed 11/15/17 (dkt. no. 45), at pg. 4, Fifth Defense.]

[4] Shelley Harrington has been employed by DPS since 1989. Since 2016, she has been the Intake Service Center Division Administrator. [Harrington Decl. at ¶ 1.]

submitting the grievance. [Grievance Policy at 4, §§ 8.1, 8.2.]
The grievance must be submitted on a Form PSD 8215, which the
inmate must obtain from the facility's staff. [Id. at 5, § 8.3.]
The Grievance Policy provides:

> An inmate who is not satisfied with the response
> received may submit an Appeal to the next step
> within five (5) calendar days from the date of
> receipt. The inmate shall submit a written
> statement regarding the basis of the appeal by
> addressing the response rendered.
>
> The first level of review for the Inmate Grievance
> is the Section Supervisor, the next level for
> appeal is the Warden/Branch/Core Program
> Administrator and the final review level is the
> Division Administrator (DA). The decision of the
> DA shall be final and the ultimate recourse in the
> Administrative Remedy Process.

[Id. at 6, § 8.3.d.]

According to Ms. Harrington, Shari Kimoto is the DPS DA
who is responsible for the third step in the grievance process.
Ms. Harrington states, before Ms. Kimoto went on vacation,
Ms. Kimoto "conducted a thorough search of the inmate grievances
submitted by John Randall Silva and found that there were no Step
Three Grievances in Silva's file." [Harrington Decl. at ¶ 5.]
In her position with DPS, Ms. Harrington has access to all inmate
grievances, and she has the ability to search them. She
conducted her own search and agrees with Ms. Kimoto's conclusion
that there is no Step Three Grievance in Silva's file. [Id. at
¶¶ 6-7.] Defendants therefore contend the Silva Defendants are

entitled to summary judgment because Silva failed to exhaust his
administrative remedies.

Plaintiffs argue exhaustion was not required because
the PLRA does not apply to cases filed in state courts. Further,
even if exhaustion was required, Silva's failure to exhaust does
not preclude the litigation of his claims because administrative
remedies were not available to him. Plaintiffs present Silva's
testimony that, immediately after the December 21, 2015 incident,
he was hospitalized at Queen's Medical Center ("Queen's") for six
days. Upon his return to OCCC, he was immediately placed in
segregation – *i.e.*, the "hole" – for fifty four days. [Pltfs.'
Concise Statement of Material Facts Re: All Pltfs.' Mem. in Opp.
to Defs.' Motion ("Pltfs.' CSOF"), filed 2/22/18 (dkt. no. 25),
Exh. 7 (Decl. of John R. Silva ("Silva Decl.")) at ¶ 3 (first of
two paragraphs numbered "3").] He did not have an inmate
handbook or grievance instructions at either place. Further,
there were no grievance forms at Queen's, and Silva's requests
for grievance forms were ignored at least twice while he was in
segregation. He was told there were no forms. [Id.] Silva also
states "from the time I was beaten I was fearful that it [sic] I
submitted a grievance about Sooalo I would be beaten again by
Sooalo, other guards, or inmates friendly with Sooalo." [Id.]

Silva states he knows, from prior experience, the
grievance process is not effective for addressing incidents

involving beatings by guards because: money damages are not an available remedy;[5] and the ACOs and others lie when such grievances are submitted to protect the ACO named in the grievance. According to Silva, another ACO, who he calls "Marcus," is telling lies to protect Sooalo from claims about the December 21, 2015 incident. [Id. at ¶ 3 (second of two paragraphs numbered "3").] Silva also asserts grievance hearings are unfair because they are adjudicated by biased prison officials. Silva therefore asserts "[t]here is no realistic opportunity to obtain any relief." [Id.]

Plaintiffs' counsel states, from his experience working on cases involving inmate grievances, a grievance seeking monetary relief is rejected, and the rejection is not appealable. [Pltfs.' CSOF, Exh. 8 (Decl. of John Rapp ("Rapp Decl.")) at ¶¶ 4-5; Pltfs.' CSOF, Exh. 6 (grievance submitted by inmate John Rawlins dated 1/15/16 and 2/5/16 ("Rawlins Form")).] The Rawlins Form states: "In accordance with P&P COR.12.03. Inmate Grievance Program, your grievance/appeal is being returned for one or more of the following reasons: . . . . The following rejections for non-compliance to policy may not be appealed." [Id.] The following two items are checked: "COR.12.03.8.1 – You

---

[5] The Grievance Policy states: "It should be noted that any form of monetary compensation is not an option or appropriate resolution for the Inmate Grievance Program or the Administrative Remedy Program." [Grievance Policy at 9, § 11.0.]

failed to file your grievance within fourteen (14) calendar days from the date on which the basis of the complaint/grievance occurred"; and "COR.12.03.11.0 – Tort claims – Monetary compensation is not an option for resolution." [Id.] At the hearing on the Motion, Plaintiffs' counsel conceded they do not have a grievance rejection notice for Silva like the Rawlins Form.

## STANDARD

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is not "left to the discretion of the district court"; it "is mandatory." Woodford v. Ngo, 548 U.S. 81, 85 (2006). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 136 S. Ct. 1850, 1862 (2016). "Available" remedies are "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Id. at 1859 (quoting Booth v. Churner, 532 U.S. 731, 738, 121 S. Ct. 1819 (2001)). An administrative remedy is not "available" under the following circumstances: "when (despite what regulations or guidance materials may promise) it operates as a

simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; <u>id.</u>; when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use"; <u>id.</u>; "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," <u>id.</u> at 1860.  However, "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." <u>Id.</u> at 1862.

This Court has stated:

> Lack of exhaustion should be raised in a summary judgment motion, unless the failure to exhaust is clear from the face of the complaint.  <u>Albino v. Baca</u>, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  A court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  <u>See, e.g.</u>, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

> In the context of prisoner administrative exhaustion, the defendant bears the burden of proving a failure to exhaust.  <u>See, e.g.</u>, <u>Brown v. Valoff</u>, 422 F.3d 926, 936 (9th Cir. 2005).  The defendant must show that an available administrative remedy existed and the prisoner failed to exhaust that remedy.  <u>See, e.g.</u>, <u>Panah v. Cal. Dep't of Corr. & Rehab.</u>, 2015 WL 1263494, at *4 (N.D. Cal. Mar. 19, 2015); <u>Meredith v. Ada

> Cty. Sheriff's Dep't, 2014 WL 4793931, at *5 (D.
> Idaho Sept. 25, 2014).  The burden then shifts to
> the plaintiff to bring forth evidence "showing
> that there is something in his particular case
> that made the existing and generally available
> administrative remedies effectively unavailable to
> him."  Albino, 747 F.3d at 1173.

Seina v. Fed. Detention Ctr. - Honolulu, CIV. NO. 16-00051

LEK-KJM, 2016 WL 6775633, at *2-3 (D. Hawai`i Nov. 15, 2016).

**DISCUSSION**

**I.   Whether the Exhaustion Requirement Applies to Removed Cases**

Plaintiffs first argue § 1997e(a) does not apply

because Silva's case was not "brought" in federal court; the

Silva Defendants chose to remove it from state court.  Plaintiffs

point to the fact that the three-strikes rule does not apply to

cases removed from state court as evidence the PLRA, in general,

does not apply to removed cases.  Plaintiffs are correct that

"[s]ection 1915(g) prevents a prisoner with three strikes from

filing a case in federal court without prepaying the filing fee,

but . . . [t]he statute does not prevent an indigent prisoner-

plaintiff with three strikes from proceeding in a case that

someone else filed in federal court."  Harris v. Mangum, 863 F.3d

1133, 1140-41 (9th Cir. 2017)  However, the language of § 1915(g)

is distinguishable from that of § 1997e(a).  Section 1915(g)

states:

> In no event shall **a prisoner bring a civil action**
> or appeal a judgment in a civil action or
> proceeding under this section if the prisoner has,
> on 3 or more prior occasions, while incarcerated

10

or detained in any facility, brought an action or
appeal in a court of the United States that was
dismissed on the grounds that it is frivolous,
malicious, or fails to state a claim upon which
relief may be granted, unless the prisoner is
under imminent danger of serious physical injury.

(Emphasis added.)  In contrast, § 1997e(a) states "**[n]o action
shall be brought** with respect to prison conditions under section
1983 of this title, or any other Federal law, . . . until such
administrative remedies as are available are exhausted."
(Emphasis added.)  By its plain language, § 1997e(a) is not
limited to cases where the prisoner brought the action in federal
court.  In other words, where the prisoner first files in state
court and the action is subsequently removed to federal court,
the exhaustion requirement is not excused.

Further, the Ninth Circuit has stated the PLRA
"represents a Congressional judgment that the federal courts may
not **consider** a prisoner's civil rights claim when a remedy was
not sought first in an available administrative grievance
procedure."  Panaro v. City of N. Las Vegas, 432 F.3d 949, 954
(9th Cir. 2005) (emphasis added).  This district court has
applied the exhaustion requirement to § 1983 cases removed from
state court.  See, e.g., Ahn v. Haw. Dep't of Pub. Safety, Civil
No. 13-00013 JMS-BMK, 2013 WL 1637136, at *2-4 (D. Hawai`i
Apr. 15, 2013).

Plaintiffs also argue the PLRA does not apply to cases removed from state court because a state waives its Eleventh Amendment immunity by removing a case to federal court. This district court has explained the rationale behind a removal's waiver of Eleventh Amendment immunity as follows:

> The Eleventh Amendment provides that the "Judicial power of the United States" shall not be construed to extend to any suit commenced against one of the states by its own citizens. U.S. Const., amend. XI; <u>Hans v. Louisiana</u>, 134 U.S. 1 (1890). A state may waive its Eleventh Amendment immunity from suit. <u>Lapides v. Bd. of Regents of the Univ. Sys. of Ga.</u>, 535 U.S. 613, 624 (2002); <u>Embury v. King</u>, 361 F.3d 562, 566 (9th Cir. 2004). A state does so when it removes a case to federal court, regardless of the type of claim (federal or state) asserted. <u>Embury</u>, 361 F.3d at 566. Removal results from a "voluntary invocation of a federal court's jurisdiction" sufficient to waive immunity. <u>Lapides</u>, 535 U.S. at 624. The Supreme Court has explained:
>
>> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand.
>
> <u>Id.</u> at 622.

<u>DW Aina Le`a Dev., LLC v. Hawai`i, Land Use Comm'n,</u> No. CV 17-00113 SOM-RLP, 2017 WL 2563226, at *5 (D. Hawai`i June 13, 2017). The same inconsistency does not exist between removal and the applicability of the PLRA's exhaustion requirement. This Court has also recognized a state's waiver of sovereign immunity

12

by removal does not waive the § 1983 requirement that a defendant must be a "person" to be subject to liability for damages and other retrospective relief. See, e.g., Davis v. Abercrombie, Civil No. 11-00144 LEK-BMK, 2013 WL 5204982, at *13 (D. Hawai`i Sept. 13, 2013). Similarly, the Silva Defendants' waiver of their sovereign immunity does not waive the PLRA's exhaustion requirement.

This Court therefore concludes § 1997e(a) applies to Silva's case, even though it was removed from state court.

## II.  Adequacy of Remedies

Plaintiffs also argue no administrative remedies were actually available to Silva because grievances seeking monetary relief are rejected, and the rejection is not appealable. However, the United States Supreme Court has held that, after the enactment of the PLRA, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." Woodford, 548 U.S. at 85 (citing Booth, 532 U.S. at 734, 121 S. Ct. 1819). Thus, Silva was required to submit a grievance pursuant to the Grievance Policy, even though his desired relief – monetary damages – was not available. Defendants presented evidence Silva did not complete the three-step grievance process for any grievance arising from the December 21, 2015 incident, and Plaintiffs have not presented any evidence Silva completed,

or even attempted, any step of the grievance process. As previously noted, Silva does not have a ruling comparable to those set forth in the Rawlins Form.

Pursuant to the Grievance Policy itself, [Grievance Policy at 9, § 11.0,] and based on the example of the Rawlins Form, it is likely Silva's grievance seeking monetary damages for the December 21, 2015 incident would have been denied, and the ruling would be considered non-appealable. If he had such a ruling and was denied the opportunity to appeal the ruling, this Court could arguably have concluded an administrative remedy was not "available" because OCCC's grievance process was "operat[ing] as a simple dead end." See Ross, 136 S. Ct. at 1859. However, this Court does not have the discretion to make these assumptions, which would excuse Silva's failure to comply with the mandatory exhaustion requirement. See Woodford, 548 U.S. at 85.

Silva also asserts no remedies are actually available through OCCC's grievance process because the officials who adjudicate the grievances are biased and ACOs and others lie to protect an ACO who has been named in a grievance. The Supreme Court has held "[p]risoners must . . . exhaust all 'available' remedies, not just those that meet federal standards." Id. Plaintiffs have not presented any evidence that Silva attempted to seek administrative remedies but was either denied relief or

prevented from exhausting the grievance process because of either officials or false testimony by ACOs or other persons. Even viewing the record in the light most favorable to Plaintiffs as the non-moving parties, see Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir. 2013), this Court cannot conclude the OCCC grievance process was so flawed that no administrative remedies were "available" to Silva. See Ross, 136 S. Ct. at 1859-60.

## III. **Access to Remedies**

Plaintiffs also contend Silva did not have access to the grievance process because: he could not obtain the necessary forms and instructions during his treatment at Queen's and while he was in segregation; and he was afraid to submit a grievance regarding the December 21, 2015 incident because of potential retaliation.

For purposes of the instant Motion, this Court will not weigh whether Silva's testimony is credible but accepts it as true for purposes of this matter. See Kauhako v. Hawai`i Bd. of Educ., CIVIL NO. 13-00567 DKW-BMK, 2015 WL 5312359, at *7 (D. Hawai`i Sept. 9, 2015) (citing Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.")). Silva states he was at Queen's for approximately six days and in segregation for approximately fifty-four days, and he did not

have access to grievance forms and instructions during that time. [Silva Decl. at ¶ 3 (first of two paragraphs numbered "3").] Even viewing the record in the light most favorable to Plaintiffs, there is no evidence Silva attempted to submit a grievance after he was released from segregation. Although his release was after the fourteen day period to submit grievances, see Grievance Policy at 4, § 8.1, Silva could have sought an extension. See id. at 4, § 8.2 ("If the inmate demonstrates a valid reason for a delay in writing, an extension in filing time may be allowed . . . ."). Even if such an extension request was denied, Plaintiff could advance an argument that he attempted to exhaust but was prevented from doing so.

Finally, as to Silva's testimony about his fear of retaliation, the Grievance Policy contains the following relevant provisions:

> b. **Exceptions to the Initial Filing.** If the inmate reasonably believes the issue is sensitive, the inmate's safety or well-being would be placed in danger if the grievance became known at the facility level, then inmate may submit the grievance directly to the appropriate branch or division administrator in a sealed envelope marked "Confidential".

> c. **Emergency Grievances.** Grievances of an exigent nature requiring an immediate resolution or a more expedited process may be given emergency status, and put on a fast-track process.

> No stage of the grievance program should be deleted as each step provides a level at

16

which administrative action can be taken
however; however, each step can be
accelerated.

Emergency grievances might include, but would
not be limited to grievances related to:

1)   Emergency medical treatment;
2)   Fire/life-safety issues;
3)   Claims concerning missed release
     dates;
4)   The risk of death or serious harm,
     and
5)   Other matters for which delay would
     significantly prejudice or harm the
     inmate, if not immediately
     resolved.

[Policy at 5-6, §§ 8.3.b-c.]  Plaintiffs have not presented any

evidence showing there is a genuine issue of material fact[6] as

the issue of whether these exceptions to the standard grievance

procedures were so inadequate to address possible retaliation

that the grievance process was either "a simple dead end" or

"incapable of use."  See Ross, 136 S. Ct. at 1859.  Further,

Plaintiffs have not presented any evidence showing there is a

genuine issue of material fact as to whether OCCC administrators

or staff "thwart[ed Silva] from taking advantage of [the OCCC]

grievance process through machination, misrepresentation, or

intimidation."  See id. at 1860.

_____

    [6] A party is entitled to summary judgment "if the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(a).

**IV.  Summary and Remand**

      Administrative remedies were "available" to Silva for

purposes of § 1997e(a), but Silva failed to exhaust the available

remedies.  Silva's failure to comply with the mandatory

exhaustion requirement precludes him from pursuing his § 1983

claim in federal court.  The Motion is granted insofar as the

Silva Defendants are granted summary judgment on Count II –

Silva's § 1983 claim, based on Silva's failure to exhaust his

administrative remedies.  This Court emphasizes it makes no

findings of fact or conclusions of law regarding the merits of

Silva's § 1983 claim.  The grant of summary judgment is without

prejudice to the adjudication of the merits of Silva's § 1983

claim, if the claim is properly presented in another forum, *i.e.*

in state court.

      Silva's remaining claims are state law claims, and the

PLRA exhaustion requirement only applies to claims brought

pursuant to federal law.  <u>See</u> § 1997e(a) ("[n]o action shall be

brought with respect to prison conditions under section 1983 of

this title, or any other Federal law").  In <u>Ahn</u>, the district

court dismissed the prisoner plaintiff's § 1983 claim for failure

to exhaust and declined to exercise supplemental jurisdiction

over the remaining state law claims, stating:

> Under 28 U.S.C. § 1367(c)(3), "district courts may
> decline to exercise supplemental jurisdiction
> . . . if . . . the district court has dismissed
> all claims over which it has original

jurisdiction[.]" "[W]hen deciding whether to
exercise supplemental jurisdiction, 'a federal
court should consider and weigh in each case, and
at every stage of the litigation, the values of
judicial economy, convenience, fairness, and
comity.'" City of Chicago v. Int'l Coll. of
Surgeons, 522 U.S. 156, 173 (1997) (quoting
Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350
(1988)); Acri v. Varian Assocs., 114 F.3d 999,
1001 (9th Cir. 1997) (en banc).

    Because state courts have the primary
responsibility for developing and applying state
law, "the values of judicial economy, convenience,
fairness and comity" do not favor retaining
jurisdiction in this case.  See Acri, 114 F.3d at
1001 (providing that "in the usual case in which
all federal-law claims are eliminated before
trial, the balance of factors will point towards
declining to exercise jurisdiction over the
remaining state-law claims" (quoting
Carnegie-Mellon Univ., 484 U.S. at 350 n.7));
Gustafson v. Fukino, 2010 WL 2507556, at *9-10 (D.
Haw. June 18, 2010) (declining supplemental
jurisdiction over state law claims after dismissal
of civil rights claim under 42 U.S.C. § 1983).

    Therefore, the court declines to continue
exercising supplemental jurisdiction over the
state law claims alleged in Plaintiff's Complaint.
The claims are matters for state courts.
Moreover, judicial economy does not favor
retaining jurisdiction.  The action in this court
has not proceeded past the initial pleading
stages—Defendants have yet to file an Answer and
the court has not resolved any substantive
matters.  See Otto v. Heckler, 802 F.2d 337, 338
(9th Cir. 1986) ("[T]he district court, of course,
has the discretion to determine whether its
investment of judicial energy justifies retention
of jurisdiction or if it should more properly
dismiss the claims without prejudice."); Castaneda
v. Saxon Mortg. Servs., 2010 WL 2303246, at *1
(E.D. Cal. June 7, 2010) (declining to exercise
supplemental jurisdiction and reasoning, in part,
that "while it has been over a year since
plaintiffs filed their original Complaint in
federal court, the case has yet to progress beyond

the motion to dismiss stage"); <u>Pica v. Wachovia Mortg.</u>, 2010 WL 2555634, at *1 (E.D. Cal. June 21, 2010) ("Since this lawsuit has not proceeded past the pleading stage, continued exercise of supplemental jurisdiction over the state law claims serves no efficiency interest.") (quotation marks and citation omitted).

2013 WL 1637136, at *4-5 (alterations in <u>Ahn</u>). The same analysis applies in the instant case. There is no basis to exercise diversity jurisdiction over Silva's claims. <u>See</u> Complaint at ¶¶ 1-3. Judicial economy and convenience do not favor retaining jurisdiction because the case was only removed in November 2017, and there have been limited proceedings in this case. Fairness and comity favor allowing Silva to litigate his state law claims in his originally chosen forum and allowing the state courts to adjudicate the matters necessary to Silva's state law claims.

This Court therefore declines to exercise supplemental jurisdiction over Silva's remaining state law claims.

### CONCLUSION

On the basis of the foregoing, Defendants' Motion for Summary Judgment, filed January 3, 2018, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as summary judgment is GRANTED in favor of the Silva Defendants as to Count II, Silva's § 1983 claim. The grant of summary judgment is based exclusively on the failure to exhaust and is WITHOUT PREJUDICE to the adjudication of the merits of the claim. The Motion is DENIED insofar as it seeks summary judgment as to

Silva's state law claims. This Court DECLINES to exercise
supplemental jurisdiction over Silva's state law claims, which
are HEREBY REMANDED to the First Circuit Court of the State of
Hawai`i.

The Clerk's Office is DIRECTED to effectuate the remand
on **April 16, 2018**, unless a motion for reconsideration of this
Order is filed by **April 13, 2018**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 29, 2018.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

THINH LUONG VS. FRANCIS SEGUEIRA, ETC., ET AL; CIVIL 16-00613
LEK-KSC; JOHN RANDALL SILVA VS. PATRICK SOOALO, ET AL; CIVIL 17-
00563 LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT